Appeal No. 2014-1422

_____

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## for the 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

_____

ENDO PHARMACEUTICALS INC.,

*Plaintiff-Appellant,*

v.

MYLAN PHARMACEUTICALS INC. and MYLAN INC.,

*Defendants-Appellees.*

_____

*Appeal from the United States District Court for the District of Delaware
in case no 11-CV-00717, Judge Renee Marie Bumb*

_____

**APPELLEE MYLAN PHARMACEUTICALS INC. AND
MYLAN INC.'S NON-CONFIDENTIAL BRIEF**

_____

Michael S. Sommer
Wilson Sonsini Goodrich & Rosati PC
1301 Avenue of the Americas
40th Floor
New York, NY
Telephone: (212) 999-5800
Facsimile: (212) 999-5899

Nicole W. Stafford
Wilson Sonsini Goodrich & Rosati PC
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746
Telephone: (512) 338-5400

Douglas Carsten
Wilson Sonsini Goodrich & Rosati PC
12235 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: (858) 350-2300

*Counsel for Defendants-Appellees
Mylan Pharmaceuticals Inc. and
Mylan Inc.*

August 4, 2014

## CERTIFICATE OF INTEREST

Counsel for the Appellee Mylan Pharmaceuticals Inc. and Mylan Inc. certifies the following:

1.      The full name of every party represented by the undersigned counsel in this case is: Mylan Pharmaceuticals Inc. and Mylan Inc.

2.      The name of the real parties in interest represented by the undersigned counsel is: Mylan Pharmaceuticals Inc. and Mylan Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by the undersigned counsel are: Mylan Pharmaceuticals Inc. is a wholly owned subsidiary of Mylan Inc.

4.      The names of all law firms and the partners or associates that appeared for Appellee in the trial court or are expected to appear for Appellee in this court are:

Douglas Carsten, Matthew Bresnhan and Katherine Van Gunst of Wilson Sonsini Goodrich & Rosati, San Diego, CA; Nicole W. Stafford of Wilson Sonsini Goodrich & Rosati, Austin, TX; Matthew Argenti of Wilson Sonsini Goodrich & Rosati, Palo Alto, CA; Yongdan Li of Wilson Sonsini Goodrich & Rosati, Los Angeles, CA; Tung-On Kong of Wilson Sonsini Goodrich & Rosati, San Francisco, CA; Michael S. Sommer of Wilson Sonsini Goodrich & Rosati, New

York, NY; Richard L. Horwitz, David E. Moore and Bindu A. Palapura of Potter

Anderson & Corroon, Wilmington, DE; Arnold B. Calmann, Katherine A. Escanlar

and Jeffery Soos of Saiber LLC, Newark, NJ.

Dated: August 4, 2014                    By:  _/s/ Michael S. Sommer_____

                                      Michael S. Sommer

                               Wilson Sonsini Goodrich & Rosati
Attorneys for Defendants-Appellees
Mylan Pharmaceuticals Inc. and
Mylan Inc.

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES .................................................. 1

STATEMENT OF THE ISSUES ........................................................ 2

STATEMENT OF THE CASE .......................................................... 3

I.    PRELIMINARY STATEMENT ................................................. 3

II.   THE SETTLEMENT AGREEMENT .......................................... 5

    A.    Settlement Negotiations ................................................ 5
    B.    Enforcement of the Parties' Settlement Agreement .......................... 8

III.  ENDO APPEALS JUDICIAL ESTOPPEL ................................ 11

    A.    Procedural Background .................................................. 11
    B.    The District Court's Judicial Estoppel Ruling ..................... 13

SUMMARY OF THE ARGUMENT .................................................. 16

ARGUMENT ............................................................................. 17

I.    STANDARD OF REVIEW ..................................................... 17

II.   THE DISTRICT COURT APPLIED THE CORRECT LEGAL STANDARDS ...................................................................... 20

    A.    The District Court Correctly Held Mylan to the Preponderance of the Evidence Standard for Burden of Proof ................................ 20

III.  ENDO MISUNDERSTANDS THE STANDARD FOR ENFORCING SETTLEMENT AGREEMENTS ............................................... 23

IV.  CONTRACT LAW PRINCIPLES GOVERN WHETHER AN ENFORCEABLE SETTLEMENT AGREEMENT EXISTS ...................... 25

    A.    As Long as All Essential Terms Are Present, a Settlement Agreement Can Be Enforced Even Though Some Matters Are Left for Further Negotiation ................................................ 27
    B.    An Oral Contract Is Enforceable Even if the Parties Intend to Memorialize the Agreement in Writing ........................... 28

V.   THE DISTRICT COURT'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS ...................................................... 29

    A.    The ███████████████ Was Not an Essential Term ................. 30

CONFIDENTIAL INFORMATION REDACTED

        1.    The District Court Found, and Endo Does Not Dispute,
              That the Parties Agreed on Three Essential Terms ................. 30
        2.    The District Court's Finding that the ████████████
              ████████ Was Not an Essential Term Is Not Clearly
              Erroneous .................................................................................... 32
   B.   Any Open Issues Exclusively Related to Non-Essential Terms ........ 38
   C.   The District Court's Determination that the Launch Date Was
        Agreed To and Definite Was Not Clearly Erroneous ......................... 40
   D.   The Parties' Agreement Was Not Contingent Upon a Writing ......... 43

VI.   THE DISTRICT COURT'S RULING DOES NOT HINDER PUBLIC
      POLICY FAVORING SETTLEMENT ........................................................ 45

VII.  THE FEDERAL CIRCUIT CANNOT AND NEED NOT REACH
      ENDO'S JUDICIAL ESTOPPEL ARGUMENT ........................................ 47

   A.   The Federal Circuit's Jurisdiction Is Limited to Final
        Judgments ............................................................................................... 47
   B.   The District Court's Judicial Estoppel Ruling Does Not Merge
        with the Enforcement Decision Properly on Appeal ......................... 48
   C.   The District Court's Judicial Estoppel Ruling Is Moot in View
        of the Parties' Subsequent Settlement ................................................ 50

VIII. THE DISTRICT COURT'S JUDICIAL ESTOPPEL RULING
      REGARDING THE '611 AND '871 PATENTS SHOULD BE
      UPHELD ........................................................................................................ 51

   A.   The District Court Properly Estopped Endo from Reasserting its
        Abandoned '611 and '871 Patent Claims ........................................... 52
        1.    Endo Abandoned Its '611 and '871 Patent Claims
              Against Mylan During Trial ..................................................... 52
        2.    In View of Endo's Abandonment, Endo Was Properly
              Judicially Estopped from Reviving its Claims ........................ 54
        3.    The '611 and '871 Patent Claims are Invalid for
              Obviousness-Type Double Patenting ....................................... 58

CONCLUSION ...................................................................................................... 59

## CONFIDENTIAL MATERIAL OMITTED

The material redacted from this brief and exhibits comprises materials filed under seal with the district court, as well as disclosures regarding settlement negotiations which were redacted from the public record by order of the district court dated June 2, 2014.

-ii-

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. City of Bessemer City*,
　　470 U.S. 564 (1985)........................................................19

*Autera v. Robinson*,
　　419 F.2d 1197 (D.C. Cir. 1969)....................................24

*Behrend v. Comcast Corp.*, No. 03-6604,
　　2012 U.S. Dist. LEXIS 137451(E.D. Pa. Sept. 25, 2012)...........................23

*California Sun Tanning USA, Inc. v. Elec. Beach Inc.*,
　　369 F. App'x 340 (3d Cir. 2010)....................................18

*Cliett v. City of Ocean City*,
　　346 F. App'x 771 (3d Cir. 2009)....................................49

*Cole v. State*,
　　922 A.2d 354 (Del. 2005)...........................................18

*Daff v. U.S.*,
　　78 F.3d 1566 (Fed. Cir. 1996) ....................................19

*Domanus v. Lewicki*,
　　42 F.3d 290 (7th Cir. 2014) .......................................56

*Ekhato v. Rite Aid Corp.*,
　　529 F. App'x 152 (3d Cir. 2013).............................53, 54

*Elfman Motors, Inc. v. Chrysler Corp.*,
　　567 F.2d 1252 (3d Cir. 1977) ................................49, 50

*Eli Lilly & Co. v. Barr Labs., Inc.*,
　　222 F.3d 973 (Fed. Cir. 2000) ....................................59

*Gen. Elec. Co. v. Joiner*,
　　522 U.S. 136 (1997)................................................20

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*,
    553 F. App'x 246 (3d Cir. 2014) .................................................................20

*In re Diet Drugs Prods. Liab. Litig.*,
    418 F.3d 372 (3d Cir. 2005) .........................................................................49

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007) .........................................................................26

*Intellect Wireless, Inc. v. HTC Corp.*,
    732 F.3d 1339 (Fed. Cir. 2013) ...................................................................19

*Intellisource Group, Inc. v. Williams*, No. 98-57-SLR,
    1999 U.S. Dist. LEXIS 12446 (D. Del. Aug. 11, 1999)........23, 27, 28, 31, 32

*Krystal Cadillac-Oldsmobile GMC v. Truck, Inc.*,
    337 F.3d 314 (3d Cir. 2003) .........................................................................57

*Lannett Co. v. Celgene Corp.*, No. 08-3920,
    2011 U.S. Dist. LEXIS 32915 (E.D. Pa. Mar. 29, 2011) .............................23

*LeBeau v. Taco Bell, Inc.*,
    892 F.2d 605 (7th Cir. 1989) .......................................................................49

*Loppert v. Windsortech, Inc.*,
    865 A.2d 1282 (Del. Ch. 2004) .......................................................27, 40, 46

*Maya Swimwear Corp. v. Maya Swimwear*,
    855 F. Supp. 2d 229 (D. Del. 2012) .............................. 22, 26, 27, 28, 31, 40

*MedPointe Healthcare, Inc. v. Kozachuk*,
    373 F. App'x 62 (Fed. Cir. 2010) .................................................................17

*Minnesota Mining & Mfg. Co. v. Chemque, Inc.*,
    303 F.3d 1294 (Fed. Cir. 2002) ...................................................................20

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
    243 F.3d 773 (3d Cir. 2001) .....................................................................20, 57

*New Hampshire v. Maine*,
    532 U.S. 742 (2001).......................................................................................55

*Newburgh Moire Co. v. Superior Moire Co.*,
218 F.2d 580 (3d Cir. 1955) ........................................................54

*Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*,
589 F. Supp. 2d 457 (D. Del. 2008) ......................................26, 27

*Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*,
834 F.2d 208 (1st Cir. 1987)........................................................56

*Peralta v. Vasquez*,
467 F.3d 98 (2d Cir. 2006) .........................................................56

*Quandry Solutions, Inc. v. VeriFone, Inc.*, No. 07-097,
2009 U.S. Dist. LEXIS 31459 (E.D. Pa. April 13, 2009) ............26

*Randolph County v. Alabama Power Co.*,
784 F.2d 1067 (11th Cir. 1986), cert. denied, 479 U.S. 1032
(1987)............................................................................................58

*Rohm and Haas Elec. Materials, LLC v. Honeywell Int'l, Inc.*,
No. 06-297, 2009 WL 1033651 (D. Del. April 16, 2009)............26

*Rumsfeld v. Freedom NY, Inc.*,
329 F.3d 1320 (Fed. Cir. 2003) .............................................47, 48

*Sample v. Decks*,
885 F.2d 1099 (3d Cir 1989) .......................................................58

*San Carlos Irrigation and Drainage v. U.S.*,
111 F.3d 1557 (Fed. Cir. 1997) ...................................................57

*Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, No. 07-2762,
2009 U.S. Dist. LEXIS 91923 (D.N.J. Oct. 2, 2009) .............25, 26

*Schaefer Fan Co. v. J & D Mfg.*,
265 F.3d 1282 (Fed. Cir.2001) ....................................................17

*Smith v. Evans*,
853 F.2d 155 (3d Cir. 1988) ........................................................49

*Standard Steel, LLC v. Buckeye Energy, Inc.*, No. 04-538,
2005 U.S. Dist. LEXIS 22378 (W.D. Pa. Sept. 29, 2005) ...........25

*Tiernan v. Devoe*,
    923 F.2d 1024 (3d Cir. 1991) ...............................................................18, 24

*Trappe Packing Corp. v. Fluid Operations & Equip., Inc.*, Case No.
    82C-MR-45, 1991 De. Super. LEXIS 22 (Del. Super. Ct. 1991) .................18

*Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*,
    735 F.3d 131 (3d Cir. 2013) ..........................................................................53

*Typeright Keyboard Corp. v. Microsoft Corp.*,
    374 F.3d 1151 (Fed. Cir. 2004) .....................................................................48

*U.S. v. Bankoff*,
    613 F.3d 358 (3d Cir. 2010) ..........................................................................20

*U.S. v. Tomko*,
    562 F.3d 558 (3d Cir. 2009) ..........................................................................19

*United Rentals, Inc. v. Ram Holdings, Inc.*,
    937 A.2d 810 (Del Ch. 2007) ........................................................................26

*United States v. Lawson*,
    736 F.2d 835 (2d Cir. 1984) ..........................................................................47

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950)..........................................................................................47

*Wagner v. Prof'l Eng'rs in Cal. Gov't*,
    354 F.3d 1036 (9th Cir. 2004) .......................................................................56

*William Lloyd, Inc. v. Hrab*, Case No. 98A-07-001-HLA,
    1999 Del. Super. LEXIS 276 (Del. Sup. Ct. 1999) ......................................42

**STATUTES**

28 U.S.C. § 1295(a) .............................................................................................48

**RULES**

Fed. Cir. Rule 27(f) .............................................................................................12

**MISCELLANEOUS**

1 Corbin on Contracts § 29 (1963) .....................................................................28

Restatement (Second) of Contracts § 20(1) (1981) ...................................................41

Restatement (Second) of Contracts § 20(2) (1981) ...........................................41, 42

Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. § 3916 (2d ed.) .....................47

Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. § 3949.4 (4th ed.) .................49

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Defendants-Appellees Mylan Pharmaceuticals Inc. and Mylan Inc. provide as follows:

(a) The following appeals were taken from the district court's initial merits judgment in the underlying matter:

      a. No. 14-1324; and

      b. No. 14-1365.

The merits judgment was subsequently vacated rendering the initial appeals moot, which is, in part, the subject of the present appeal, and this Court dismissed the initial merits appeals by mandate dated May 30, 2014.

(b) There are no related cases pending in this Court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in ruling that the parties entered into an enforceable settlement agreement on January 28, 2014?

2. Whether this Court has jurisdiction to review a trial decision, vacated by the district court and superseded by the district court's enforcement of the Parties' settlement agreement—the only appealable final judgment?

3. If the Court finds jurisdiction, whether the district court abused its discretion in concluding that Endo was judicially estopped from pursuing its claims against Mylan related to U.S. Patent Nos. 5,637,611 and 5,827,871?

## STATEMENT OF THE CASE

## I. PRELIMINARY STATEMENT

This case is about the force of contracts and holding parties to their word. On January 28, 2014, after extensive negotiations between the parties and with the encouragement of the district court, the parties reached a final settlement agreement in their patent infringement dispute over Defendant-Appellees Mylan Pharmaceuticals Inc. and Mylan Inc. ("Mylan")'s proposed generic pharmaceutical product. Understanding that this settlement agreement fully resolved their dispute, the parties agreed to inform the district court that they had settled, with the expectation that the district court would then refrain from issuing a decision on pending validity issues. But the district court acted quicker than the parties—about twenty minutes after the parties' reached their agreement, but before they had the opportunity to inform the court, the parties received notice that the district court issued its decision in favor of Plaintiff-Appellant Endo Pharmaceuticals, Inc. ("Endo").

Although the parties' settlement agreement plainly rendered the district court's decision moot, after learning that the district court had ruled in its favor, Endo acted as if the settlement had never occurred, insisting simply that "circumstances had changed." Endo's unilateral abrogation of the parties' settlement agreement, however, was not countenanced by the district court.

Endo's attempted repudiation, as the district court determined after a full-evidentiary hearing, was completely contrary to well-settled law, which plainly recognizes the enforceability of the parties' oral settlement agreement. In making this determination, the district court appropriately applied contract law principles to the adduced facts and applied the correct standard to evaluate this matter. Like the district court, this Court should hold Endo to its word and not allow Endo to unilaterally evade its obligations. Moreover, permitting Endo to evade its agreement merely because the district court issued its decision before the parties had an opportunity to notify the court of their agreement both would be unjust to Mylan and would fly in the face of public policy favoring settlement. Accordingly, the district court's decision enforcing the parties' settlement agreement should be affirmed.

Endo's attempt to challenge the district court's judicial estoppel ruling is equally flawed and represents yet another attempt by Endo to evade the consequences of its settlement with Mylan. Even if the Court had jurisdiction to consider the district court's judicial estoppel ruling, which this Court does not, the parties' binding and enforceable settlement agreement renders Endo's objection to that ruling moot. In any event, the district court's ruling on judicial estoppel does not constitute an abuse of discretion and therefore should be affirmed.

-4-

## II.   THE SETTLEMENT AGREEMENT

### A.   Settlement Negotiations

In November 2013, Judge Renee Marie Bumb sitting by designation in the United States District Court for the District of Delaware conducted an eight-day bench trial in a patent infringement case between Endo Pharmaceuticals Inc. ("Endo") and Mylan Pharmaceuticals Inc. and Mylan Inc. ("Mylan").  A2.  At the conclusion of the trial, Judge Bumb encouraged Mylan and Endo to engage in settlement discussions.  A4.  In compliance with this order, the parties repeatedly met in person and by telephone over the course of two months to negotiate settlement terms.  A4-A11.  The parties quickly narrowed their focus to three essential terms, the details of which were negotiated by the parties for over one month.  On January 10, 2014, Endo conveyed its "final" settlement offer on these three essential terms: (1) Mylan would be entitled to launch its proposed generic four weeks prior to patent expiration (the expiration date had been stipulated to by the parties in the district court litigation); (2) Endo would not license or authorize the launch of a so-called authorized generic or any other generic frovatriptan product any earlier than ten days prior to patent expiration, and (3) Endo would pay Mylan $1.5 million in attorney fees.  A11-A12; A2092 at ¶ 4.  With Endo's "final" offer in hand, Mylan elevated the offer to senior management for review. A13; A1945:22–24.

On January 23, 2014, while Endo's offer was pending but before Mylan had received final authority to accept, counsel for the parties reported to the district court on the status of settlement negotiations. During this conference, Endo's counsel confirmed that Endo had made a settlement offer that "was probably the final [offer] or extremely close to it" that was outstanding. A13; A1944:22-A1945:2. Mylan's counsel confirmed that Endo's settlement offer remained outstanding and had been elevated to Mylan's senior management for final approval. A13; A1945:22–24.

On the evening of January 27, 2014, Mylan senior management approved acceptance of Endo's January 10 settlement offer. A13; A2742:8–17. This authorization was conveyed internally at Mylan to Dr. Andrea Tiglio, Patent Litigation Counsel for Mylan, the next morning. Recognizing that the district court's ruling on the merits could issue at any moment, Dr. Tiglio was anxious to convey Mylan's acceptance to Endo as soon as possible. After emailing Guy Donatiello, Endo's Senior Vice President of Intellectual Property, and receiving an out-of-office reply in response, Dr. Tiglio was able to reach Mr. Donatiello on his cell phone and immediately informed him that Mylan accepted Endo's January 10 settlement offer. A14; A2673:17-A2674:9. Dr. Tiglio then intentionally and explicitly recited the three terms of Endo's January 10 offer to Mr. Donatiello, who responded to the news of Mylan's acceptance by exclaiming "That's great!" A14-

A15; A2767:15–18; A2719:3-18.  During the call, Dr. Tiglio and Mr. Donatiello also briefly addressed a draft written settlement agreement that Mylan had forwarded to Endo on January 24, when it became clear that the parties were extremely close to finalizing their agreement on the three essential terms.  In response to Mr. Donatiello's comment that there remained issues to be resolved with respect to the January 24 draft, which contained certain provisions that Mylan generally included in such settlements, Dr. Tiglio invited Mr. Donatello to "mark it up."  *See* A2695:23–A2696:4.  Neither side regarded the January 24 draft as a counteroffer to Endo's January 10 "final" offer, and Endo did not withdraw or otherwise amend its January 10th offer as a result of receiving the draft. A2762:18-22, A2764:6-8; A2665:23-A2666:8.

Having resolved their dispute, Mr. Donatiello and Dr. Tiglio agreed to submit a joint letter to the district court advising that Endo and Mylan had reached a settlement in principle and were working to finalize the papers. A15–A17. Dr. Tiglio and Mr. Donatiello agreed that it was unnecessary to request that the district court hold any decision on the merits of the dispute in abeyance because, as Mr. Donatiello conceded to Judge Bumb, "if [the court] were to get a letter from the parties saying that an agreement had been reached in principle, [the court] would know not to issue an opinion."  A17; A2771:18–25; *see also* A2675:7–11.

Approximately twenty minutes after Mylan's acceptance of Endo's January 10 offer, but before the parties could submit their joint letter informing the court of the settlement, the district court issued its decision finding the asserted claims of U.S. Patent No. 5,464,864 valid in favor of Endo ("Merits Decision"). A1948–A2055; A2056–A2057. Fearful that Endo would somehow attempt to back out of its agreement, Dr. Tiglio and Ms. Minaski ("Mini") Bhatt, another Mylan in-house attorney, sought Mr. Donatiello's confirmation that Endo would abide by the settlement terms agreed to by the parties, notwithstanding the district court's Merits Decision. A18; A2678:8–14; A2743:5–10. In response, Mr. Donatiello stated that "circumstances had changed" by virtue of the district court's decision, and that no settlement existed. A18; A2679:8–A2680:2.

## B.    Enforcement of the Parties' Settlement Agreement

Faced with Endo's refusal to abide by the parties' agreement, on February 3, 2014, Mylan moved the district court to enforce the settlement terms agreed to by the parties. A18; *See* A2068–A2072. Endo opposed the motion. A2127. On March 18, 2014, the district court conducted an evidentiary hearing at which the three individuals who were involved in the settlement dialogue testified: Dr. Tiglio and Ms. Bhatt from Mylan, and Mr. Donatiello from Endo. A4 n.2.

On April 8, 2014, the district court issued a 39-page opinion setting forth the court's findings of facts and conclusions of law as required by Federal Rule of

-8-

Civil Procedure 52(a)(1) and ultimately granted Mylan's motion to enforce (the "Opinion"). A1–A39. In its Opinion, the district court concluded that the parties had agreed to a settlement containing the three essential terms noted previously. A37–A38; A40–A42. Specifically, the district court held that it was undisputed that Endo's January 10 offer consisted of three terms, that on January 28 Mylan orally accepted that offer, and that at no time prior to Mylan's acceptance had Endo withdrawn or amended the January 10 offer. A24, A31. While Endo had argued that there was a fourth term that the parties had discussed but not yet agreed to—a ▇▇▇▇▇▇▇▇▇▇▇▇▇—the district court found that this was not an essential term, that Mylan did not insist on the inclusion of such a term, and that the term was not part of the final settlement offer made by Endo and accepted by Mylan. A34–A36. Moreover, to the extent there was any factual dispute as to the negotiations concerning the ▇▇▇▇▇▇▇▇▇▇▇, the district court credited the testimony of Dr. Tiglio and Ms. Bhatt, finding the testimony of Mr. Donatiello "inconsistent" and "questionable." *See* A5359–A5360; A4–A7; A12; A34–A35.

In granting Mylan's motion, the district court also rejected Endo's argument that the settlement agreement was not final because it had yet to be memorialized in writing. A27–A29. The district court noted that, under the law, memorialization is only required where "the parties positively agree that there will be no binding contract until the formal document is executed." A27 (citation

-9-

CONFIDENTIAL INFORMATION REDACTED

omitted).    And,  the  district  court  concluded,  "[a]lthough  both  parties  clearly

intended  that  a  written  contract  would  ultimately  be  drafted  [],  the  record

contain[ed]  no  evidence  indicating  that  the  parties  made  a  settlement  contingent

upon  the  execution  of  a  written  agreement."  A28.

Consistent  with  its  findings,  the  district  court  ordered  the  parties  to  "execute

a  written  settlement  agreement  reflecting  the  essential  terms  agreed  upon  by  the

parties"  and  as  set  forth  in  the  April  8  Order  (A40–A42)  and  Opinion  (A1–A39).

On  April  15,  2014,  Endo  moved  in  district  court  for  a  stay  of  the  April  8

Order  pending  appeal.    A3075–A3078.    Mylan  opposed  that  motion,  and  the

district  court  heard  oral  argument  on  June  18  and  19,  2014.    A3534–A3554;

A5335–A5369.    At  the  conclusion  of  the  argument,  the  district  court  denied  Endo's

motion,  finding  that  Endo  had  failed  to  satisfy  the  elements  necessary  for  a  stay

pending  appeal,  including  a  failure  to  show  likelihood  of  success  on  the  merits.

A5364;  A5335–A5343.    Endo  has  since  filed  a  motion  for  stay  pending  appeal  at

the  Federal  Circuit.    The  Court  denied  Endo's  motion  on  July  24,  2014.    A5403.

## III.   ENDO APPEALS JUDICIAL ESTOPPEL[1]

### A.   Procedural Background

Prior to the district court's hearing on Mylan's motion to enforce the settlement agreement, Mylan had timely filed an appeal at the Federal Circuit to challenge the district court's January 28 Merits Decision. A2268–A2270. Subsequently, Endo filed a cross-appeal raising *inter alia* portions of the decision related to the district court's judicial estoppel ruling (collectively with Mylan's appeal of the Merits Decision, the "Merits Appeals"). A2463–A2466.   On February 25, 2014, Mylan filed a Fed. R. Civ. P. Rule 60(b) motion in district court requesting that the court vacate the Merits Decision should the district court find that the parties entered into an enforceable settlement agreement prior to the issuance of the Merits Decision. A2232–A2238.   On March 4, 2014, pursuant to Fed. R. App. P. 4(a)(4)(B)(i), Mylan moved for this Court to deactivate the Merits Appeals, case numbers 2014-1324 and -1365. A3146–A3148.   The Federal Circuit granted Mylan's motion to deactivate on March 21, 2014.   A5370-A5372; A5373-A5374.   After prevailing on its motion to enforce, Mylan moved to reactivate and dismiss case numbers 2014-1324 and -1365, which were dependent on the since-

---

[1] Assuming this Court has jurisdiction to consider Endo's judicial estoppel arguments, which it does not (*see infra* Argument Section VII), the Federal Circuit need not reach Endo's judicial estoppel arguments should it affirm the district court's April 8 Opinion.

vacated Merits Decision. A5375-A5385. Endo did not oppose Mylan's motion, and on May 30, 2014 this Court dismissed Mylan's since-mooted appeal of the district court's vacated Merits Decision. A5386-A5388; A5389-A5391.

On April 16, 2014, Endo filed an Amended Notice of Appeal ("Amended Notice"), apparently intending to "amend" its cross-appeal to include both the District Court's April 8, 2014 enforcement decision and the vacated Merits Decision. A3079–A3082. Specifically, Endo's Amended Notice states, *inter alia*, that it "further appeals from the Court's Order at trial judicially estopping Endo from asserting U.S. Patent Nos. 5,637,611 and 5,827,871 against Defendants, and from all other adverse rulings made prior to, during and after the November 2013 trial in the above-entitled action."[2] A3079–A3080. Due to Endo's attempt to appeal portions of the vacated merits decision, Mylan moved, as required by Fed. Cir. Rule 27(f),[3] to dismiss portions of Endo's Amended Notice for lack of jurisdiction. A3151–A3162. On May 30, 2014, this Court denied Mylan's motion, not because it determined that jurisdiction was proper, but rather because the Court

---

[2] The District Court determined that Endo waived its claims regarding the '611 and '871 patents and was judicially estopped from asserting those patents against Mylan. Following trial, the Patent Office issued public notice in the Official Gazette that Endo's terminal disclaimers are improper and invalid. *See* 1398 OG 149, obtained on January 21, 2014 from http://www.uspto.gov/web/offices/com/ sol/og/2014/week03/TOC.htm#null. A3150.

[3] Fed. Cir. Rule 27(f) provides, "A motion to dismiss for lack of jurisdiction or to remand should be made as soon after docketing as the grounds for the motion are known."

"deem[ed] it the better course for Mylan to raise any issues concerning jurisdiction in its brief." A5387.  Because Endo continues to pursue appellate review of the district court's vacated Merits Decision (*see* Endo's Op. Br. at 53-59), Mylan responds herein.  *See* infra Argument Section VIII.

### B.    The District Court's Judicial Estoppel Ruling

In its August 16, 2011 complaint, Endo alleged infringement of three patents: U.S. Patent Nos. 5,464,864 ("the '864 patent"), 5,637,611 ("the '611 patent"), and 5,827,871 ("the '871" patent).  A5392.  The '611 patent is a continuation of the '864 patent, while the '871 patent is a continuation-in-part of the '864 patent.  A87; A99.  Endo maintained its contentions for all three patents for over two years, up to and including the joint pretrial order filed on September 18, 2013.  A857–A861.  Among its numerous defenses, Mylan contended that the asserted claims of the '611 and '871 patents were invalid for obviousness-type double patenting over the '864 patent.  A918–A920.  Endo, however, failed to even attempt a reasonable rebuttal to Defendants' obviousness-type double patenting defenses, whether in any of its expert reports, during any of its expert depositions, in the Joint Pretrial Order, or the October 16, 2013 pretrial conference.  *See* A1417–A1419; A1899–A1900; A1694:15–A1697:17; *see also* A883.

Following the October 16, 2013 pretrial conference, less than two weeks before trial was scheduled to begin, Endo attempted to moot Mylan's obviousness-

type double patenting defense by filing terminal disclaimers at the Patent Office for the '611 and '871 patents. *See* A1412–A1416. As Mylan immediately told the district court, and as time would bear out, these terminal disclaimers were improper in that—because of a patent term extension previously given to the '864 patent—they were purely illusory and had no actual effect on the terms of the '611 or '871 patents.[4] A1417–A1425; A1430–A1431; A1899–A1900. In addition, even if the terminal disclaimers had been acceptable to the Patent Office—which they ultimately were not—Mylan explained to the district court that Endo waived the right to rely on them by failing to raise the disclaimers—or any other basis for opposing Mylan's double patenting defense—in the joint pretrial order. *See* A1417–A1425; A1899–A1900; A1694:15–A1697:17; *see also* A883.

On the first day of trial, Endo introduced testimony by Dr. Vincent Rocco, who was presented by Endo as an expert in the field of medicinal chemistry and drug design with a focus on serotonin drug development. A1521:7–9. On cross-examination, Dr. Rocco admitted that each of the asserted claims of the '611 and '871 patents fully encompasses the claims of the earlier '864 patent. 5A1570:22–A1574:16.

---

[4] Recognizing this, the Patent Office ultimately did not accept the terminal disclaimers finding them invalid.

Following Dr. Rocco's admissions, the district court raised the dispute surrounding the terminal disclaimers. A1638:7–A1639:3. Upon resuming the discussion at the beginning of the second day of trial, Endo initially refused to provide a straightforward explanation of its view of the effect of the terminal disclaimers, stating only that because (in Endo's view) the double patenting defense was now out of the case, "with this disclaimer everything rises and falls on the '864 patent, we can litigate the '864 patent and that will govern what happens in the case." A1700:4–7. The district court then asked Endo for a yes or no answer to the question of whether the '611 and '871 patents were still in the case, which Endo refused to provide. A1700:8–18.

Finally, when pressed by the district court as to what Endo was really willing to agree, Endo definitively stated that it would no longer pursue its claims against Mylan with respect to the '611 and '871 patents:

> Court:  And as to Mylan you can't prosecute.
>
> Endo:  What I'm saying is that I'm willing to – *the stipulation I offered was the '864 patent will be the patent that we sue on* and if there's infringement, fine; if there's no infringement – well, not so fine, but that is what it is.
>
> Court:  *And you will not further prosecute a case on the remaining two patents, the '611 and the '871, against Mylan on its current ANDA.*
>
> Endo:  *Yes.*

A1709:21–A1710:4. (emphasis added)

-15-

The district court ruled that Endo would be judicially estopped from further prosecuting claims against Mylan on the '611 and '871 patents with respect to Mylan's current ANDA.  A1710:5–19; A1966–A1973.

## SUMMARY OF THE ARGUMENT

On appeal, Endo challenges the district court's holding that the parties reached an enforceable oral settlement agreement on January 28, 2014.  Endo also attempts to appeal the district court's decision that Endo is judicially estopped from pursuing claims against Mylan relating to the '611 and '871 patents.  On both counts, Endo's appeal fails.

The district court's decision that the parties reached an enforceable settlement agreement is based on careful application of the correct burden of proof and contract law principles, and factual findings derived from a full evidentiary hearing.  In particular, the record firmly supports each of the district court's conclusions challenged by Endo on appeal, including: (1) the district court's determination that the ███████████████ was not an essential term, (2) the district court's determination that any open issues or future negotiations relate merely to non-essential terms, (3) the district court's determination that the launch date was agreed upon, definite, and enforceable; and (4) the district court's determination that the parties did not make their settlement contingent upon a signed writing.  The simple truth is that Endo made what it admits was a final

-16-

CONFIDENTIAL INFORMATION REDACTED

settlement offer to Mylan on January 10, consisting of three and only three terms, and Mylan unequivocally accepted that offer on January 28, 2014. Although Endo may now wish that it had withdrawn or amended its January 10 settlement offer prior to Mylan's acceptance, it is undisputed that Endo did not. Accordingly the district court's decision granting Mylan's motion to enforce should be affirmed.

Endo's judicial estoppel argument is equally flawed. The settlement agreement mooted any issues arising earlier in the case, including the district court's judicial estoppel ruling. Moreover, the district court was entirely correct to judicially estop Endo from pursuing those claims after Endo abandoned them on the second day of trial, particularly in light of the fact that Endo waived any opposition to Mylan's obviousness-type double patenting defense to these claims by failing to raise such opposition in the Joint Pre-trial Order (A356–A795) or otherwise. Accordingly, if reached, the district court's ruling in this regard should also be affirmed.

## ARGUMENT

## I.    STANDARD OF REVIEW

The Federal Circuit applies regional circuit law when reviewing a decision to enforce a settlement agreement. *See Schaefer Fan Co. v. J & D Mfg.*, 265 F.3d 1282, 1288 (Fed. Cir. 2001); *MedPointe Healthcare, Inc. v. Kozachuk*, 373 F. App'x 62, 64 (Fed. Cir. 2010). Although conclusions of law are reviewed *de novo*,

*see California Sun Tanning USA, Inc. v. Elec. Beach, Inc.*, 369 F. App'x 340, 346 n.6 (3d Cir. 2010), the Third Circuit applies the "clearly erroneous" standard in reviewing the district court's factual findings, including findings concerning the *existence* or *terms* of a settlement agreement. *See Tiernan v. Devoe*, 923 F.2d 1024, 1031 n.5 (3d Cir. 1991) ("If we had before us explicit findings by the district court, we would review them under a clearly erroneous standard."); *Cole v. State*, 922 A.2d 354, 359 (Del. 2005) (stating "a trial judge's ruling concerning the existence or nonexistence of an oral contract is a question of fact that we review for an abuse of discretion"); *Trappe Packing Corp. v. Fluid Operations & Equip., Inc.*, Case No. 82C-MR-45, 1991 De. Super. LEXIS 22, at *12–13 (Del. Super. Ct. 1991) (stating "precisely which terms are included in the contract is clearly a material issue of fact"). Endo does not dispute that the district court's findings of fact are reviewed on appeal under a clear error standard. *See* Endo's Op. Br. at 34.

The clear error standard is highly deferential, and, as the U.S. Supreme Court explained, permits reversal only when there is "a definite and firm conviction" that the district court was in error. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, this Court may not reverse it even if it would have weighed the evidence differently if it were sitting as the trier

of fact.  *Id*.  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Id*.

Moreover, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."  *Id*. at 575.  Indeed, credibility determinations by the trial judge "can virtually never be clear error."  *Id*.  ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, *that finding, if not internally inconsistent, can virtually never be clear error*.") (emphasis added).  *See also, Daff v. U.S.*, 78 F.3d 1566, 1574 (Fed. Cir. 1996) (finding credibility determinations by trial courts, on which factual findings are based, are "virtually unreviewable"); *Intellect Wireless, Inc. v. HTC Corp*., 732 F.3d 1339, 1346 (Fed. Cir. 2013) ("[C]redibility determinations are an aspect of fact-finding that appellate courts should rarely reverse.") (citation omitted); *see also U.S. v. Tomko*, 562 F.3d 558, 561 (3d Cir. 2009) (en banc) ("The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. . . .").

-19-

The Federal Circuit also applies regional circuit law when assessing whether judicial estoppel applies. *Minnesota Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1302-03 (Fed. Cir. 2002). In the Third Circuit, "[a] district court's decision to invoke the doctrine of judicial estoppel 'is reviewed only for abuse of discretion.'" *Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, 553 F. App'x 246, 250 (3d Cir. 2014) (citing *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001). The abuse of discretion standard is "highly deferential." *U.S. v. Bankoff*, 613 F.3d 358, 374 (3d Cir. 2010) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) and noting that "deference 'is the hallmark of abuse-of-discretion review'").

## II. THE DISTRICT COURT APPLIED THE CORRECT LEGAL STANDARDS

### A. The District Court Correctly Held Mylan to the Preponderance of the Evidence Standard for Burden of Proof

On appeal, Endo does not dispute that the appropriate burden of proof for establishing an oral agreement, including an oral settlement agreement, is the preponderance of the evidence.[5] *See* Endo Op. Br. at 36. Instead, Endo alleges

---

[5] Although in the proceedings below, Endo suggested that the higher "clear and precise" standard may apply, Endo does not assert this position on appeal, nor does Endo otherwise challenge the applicability of the preponderance of the evidence standard. In any event, the district court found that Mylan established the existence of an oral contract under both the preponderance of the evidence

that the district court did not hold Mylan to this burden of proof, but rather shifted the burden onto Endo to prove that an enforceable agreement did not exist. Specifically, Endo claims that the district court "act[ed] as if it was" Endo's burden to show that additional terms aside from the three contained in Endo's January 10 "final" offer were essential to the parties' agreement, thereby rendering Mylan's oral acceptance of Endo's January 10 offer unenforceable. *Id*.

Endo's argument that the district court engaged in improper burden-shifting is without merit. Contrary to Endo's suggestion, the district court explicitly recognized that Mylan had the burden of proof, by a preponderance of the evidence, to prove that a settlement agreement existed. A23 ("As the party seeking to enforce the settlement agreement, Mylan bears the burden of proving the existence of the agreement by a preponderance of the evidence."). In arguing that the district court nonetheless engaged in improper burden-shifting, Endo cites generally to the portion of the district court's opinion that analyzes why certain terms, including the "███████████████" term, were not "essential." *See* A32–A38. Yet far from supporting Endo's position, this section of the opinion makes clear that the district court was convinced that these additional terms were non-essential in light of evidence presented by Mylan at the hearing, including

---

standard as well as the higher "clear and precise" standard originally urged by Endo. A22–A23 n. 14.

CONFIDENTIAL INFORMATION REDACTED

testimony by Ms. Bhatt and Dr. Tiglio concerning the parties' course of dealings and objective manifestations of the parties' intent during the settlement negotiations. *See, e.g.*, A34–A35 (crediting Bhatt's testimony and concluding that "Mylan did not insist upon ████████████████████ and ceased pushing it altogether almost immediately."). *See* A2748:18-20 ("THE COURT: [] Is your testimony it never came up after [December 4]? THE WITNESS: That's correct.").

Endo's argument that the district court "disregarded uncontested evidence" presented by Endo concerning these additional terms is without merit. Endo Op. Br. at 36. As is evident from its Opinion, the district court considered testimony offered by Endo to support its position that open terms existed, that Endo expressed concerns regarding Mylan's position on those open terms during the January 28 call, and that Mylan had invited Endo to mark up the January 24 draft settlement agreement in accordance with Endo's position on those open terms. *See* A32–A38. What Endo fails to appreciate is that the district court did not "ignore" such evidence, but rather found that even if open terms still existed, the terms were non-essential and thus did not prevent the January 28 agreement from binding the parties. A33 (stating "a settlement may be reached even where parties have agreed to continue negotiation on 'other fine points.'") (quoting *Maya Swimwear Corp. v. Maya Swimwear*, 855 F. Supp. 2d 229, 236 (D. Del. 2012). The court specifically (and correctly) rejected Endo's argument that the parties were required to reach

CONFIDENTIAL INFORMATION REDACTED

agreement on *all* terms in order for their agreement to be enforceable, and instead properly concluded that only agreement on "essential" terms is necessary for an oral settlement agreement to be enforceable. *Id.* (citing *Lannett Co. v. Celgene Corp.*, No. 08-3920, 2011 U.S. Dist. LEXIS 32915, at *6 (E.D. Pa. Mar. 29, 2011) (finding oral settlement agreements are enforceable if the parties have agreed upon all essential terms); *Intellisource Group, Inc. v. Williams*, No. 98-57-SLR, 1999 U.S. Dist. LEXIS 12446, at 15 (D. Del. Aug. 11, 1999) (finding no enforceable agreement where essential terms were left unresolved); *Behrend v. Comcast Corp.*, No. 03-6604, 2012 U.S. Dist. LEXIS 137451, at 26-27 (E.D. Pa. Sept. 25, 2012) (finding no contract where material terms left unresolved)).

In short, the record reflects that the district court considered the evidence offered by both parties during the hearing and, taking into account this evidence, concluded that Mylan met its burden of proving by a preponderance of the evidence the existence of an enforceable settlement agreement. *See* A32–A38. This is precisely what the district court was supposed to do.

## III. ENDO MISUNDERSTANDS THE STANDARD FOR ENFORCING SETTLEMENT AGREEMENTS

Endo confusingly argues, based on the Third Circuit case *Tiernan v. Devoe*, that enforcement of a settlement agreement is akin to summary judgment in that "review is plenary and all factual inferences should be drawn in favor of the non-moving party[.]" Endo Op. Br. at 33–34. Endo, however, completely ignores

critical procedural differences between *Tiernan* and this case. In *Tiernan*, when defendants in a real property-related dispute moved to enforce certain settlement agreements, the court ruled in favor of the defendants in a summary fashion, *i.e.*, the district court *did not* hold an evidentiary hearing. *Tiernan*, 923 F.2d at 1027– 28. Holding that "the district court's summary enforcement of the settlement agreements was inappropriate," the Third Circuit vacated the district court's decision enforcing the settlements and remanded the matter so that the district court could *conduct evidentiary proceedings* in order to resolve disputed issues of material fact. *Id.* at 1038 (citing *Autera v. Robinson*, 419 F.2d 1197, 1203 (D.C. Cir. 1969) (reversing an order enforcing a disputed settlement agreement without a hearing)).

In contrast with *Tiernan*, the district court in the instant case held a full evidentiary hearing at which the three individuals who were involved in the settlement negotiations from both parties testified and during which evidence was presented by both parties. A4 n.2. The procedure here is therefore entirely consistent with *Tiernan*'s holding that, when material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the district court should conduct an evidentiary hearing[6] *See Tiernan* 923 F.2d at 1031. Although Endo

---

[6] As discussed further below, *after* the district court conducted its hearing on Mylan's motion to enforce, it was clear that there was no disputed issue of material

repeatedly tried to muddy the legal standards below by insisting that *Tiernan* requires application of the summary judgment standard to Mylan's motion to enforce, the district court rightly disagreed, stating:

> I find that Endo's brief stating the law and relating to the summary judgment standard misstates what the law is in this regard . . . . Essentially, Endo takes the position that if there is an issue of fact, then a motion to enforce the settlement must be denied and can never be decided by the Court. I find this without merit. *Here the Court held a hearing*. I resolved all of the disputed issues.

A5358–A5359 (emphasis added). The district court was and remains correct.

## IV. CONTRACT LAW PRINCIPLES GOVERN WHETHER AN ENFORCEABLE SETTLEMENT AGREEMENT EXISTS

Not only did the district court hold Mylan to the appropriate burden of proof, but the court also applied the appropriate contract law principles to find that an enforceable settlement agreement exists between Mylan and Endo.

When analyzing a motion to enforce a settlement agreement, a district court applies principles of local contract law.[7]  A20–A21 (citing *Sanofi-Aventis U.S. LLC*

---

fact at all: Endo made a final settlement offer to Mylan on January 10, 2014 (A2759:24-A2761:10; A2768:1-11); the settlement offer remained open when Mylan accepted it on January 28, 2014 (A2761:23-A2762:1; A2768:1-4); and the parties agreed to notify the court of their settlement agreement so that the court could halt the litigation as appropriate. A2771:9-25.  Under these circumstances, the law is clear that an oral contract will be enforced. *See e.g.*, *Standard Steel, LLC v. Buckeye Energy, Inc.*, No. 04-538, 2005 U.S. Dist. LEXIS 22378, at 24 (W.D. Pa. Sept. 29, 2005)

[7] The district court properly concluded, and Endo does not dispute, that "[b]ecause the Court does not find that Delaware and Pennsylvania [contract] law conflict, it

*v. Sandoz, Inc.*, No. 07-2762, 2009 U.S. Dist. LEXIS 91923, at 6 (D.N.J. Oct. 2, 2009) and *Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457, 461 (D. Del. 2008)).  Under Delaware law, "'a contract comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms.'" A22 (citing *Maya Swimwear*, 855 F. Supp. 2d at 234) (quoting *Rohm & Haas Elec. Materials, LLC v. Honeywell Int'l, Inc.*, No. 06-297, 2009 WL 1033651, at *5 (D. Del. April 16, 2009)); *see also United Rentals, Inc. v. Ram Holdings, Inc.*, 937 A.2d 810, 835 (Del Ch. 2007) (recognizing Delaware adheres to the objective theory of contracts).  Similarly, under Pennsylvania law "[e]nforceable agreements . . . must satisfy three requirements: (1) both parties must manifest an intent to be bound by the terms of the agreement; (2) the terms must be sufficiently definite to be enforceable; and (3) the agreement must be supported by consideration." *Quandry Solutions, Inc. v. VeriFone, Inc.*, No. 07-097, 2009 U.S. Dist. LEXIS 31459, at 24-25 (E.D. Pa. April 13, 2009).

---

need not analyze which law should apply but will apply the law of the forum state, Delaware." A22; *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 358 (3d Cir. 2007); *Sanofi-Aventis*, 2009 U.S. Dist. LEXIS 91923 at 7 ("The court, however, need not engage in any choice of law analysis because it appears that both states apply similar principles with regard to the issues at hand and, therefore, the choice of law will have no effect on the Court's ultimate disposition of this motion.").

## A.   As Long as All Essential Terms Are Present, a Settlement Agreement Can Be Enforced Even Though Some Matters Are Left for Further Negotiation

Endo misstates the law in claiming that "[d]iscussion of other outstanding terms and further negotiations precludes finding an enforceable settlement." *See* Endo Op. Br. at 42.  It is well-settled that "a settlement agreement may be enforced although there are some matters left for negotiation, as long as, all essential terms are present." *Parker-Hannifin*, 589 F. Supp. 2d at 463; *see also Maya Swimwear*, 855 F. Supp. 2d at 234 ("A contract contains all essential terms and is therefore enforceable when 'it establishes the heart of the agreement;' it need not, however, contain all terms as some matters may be left for future negotiation.") (quoting *Parker-Hannifin*, 589 F. Supp. 2d at 463).   Accordingly, the district court was correct in holding that, "[i]f the parties reached an agreement on all essential terms, then a valid contract exists."   A32 (citing *Intellisource Grp.*, 1999 U.S. Dist. LEXIS 12446 at 12–13); *accord Loppert v. Windsortech, Inc.*, 865 A.2d 1282, 1289 (Del. Ch. 2004) (a settlement agreement is enforceable if it contains all essential terms).

Moreover, in determining whether a term is essential to the agreement, the district court correctly followed the contract law principle that "the parties' course of dealing and the objective manifestations of parties' intent" show what terms are

essential.[8]  A34; *see also, Intellisource Grp*., 1999 U.S. Dist. LEXIS 12446 at 12–13 (quoting 1 Corbin on Contracts § 29, at 88 (1963)) ("The court must look to the parties' 'antecedent expressions, their past action and custom, and other circumstances" to determine whether a term is essential.).

### B.    An Oral Contract Is Enforceable Even if the Parties Intend to Memorialize the Agreement in Writing

Endo does not dispute that an oral settlement agreement can be enforceable, even where that agreement is not memorialized in writing.  Instead, Endo suggests that there is no enforceable settlement agreement in this case because both Endo and Mylan "contemplated" that their agreement would be reduced to writing. Endo Op. Br. at 49.  Contrary to Endo's suggestion, the case law, as cited by the district court, explains: "'The fact that the parties intend to execute a formal agreement . . . is *not dispositive*.  The question is whether the parties *positively agree* that there will be no binding contract until the formal document is executed.'"  A27 (citing *Maya Swimwear*, 855 F. Supp. 2d at 235 (internal citation omitted) (emphasis added)).

In other words, mere intention by the parties to memorialize their oral agreement in writing does not render their oral contract unenforceable, but rather

---

[8] The district court's factual findings on these issues, including the court's findings underlying its conclusion that none of the "open terms" identified by Endo were essential to the parties' agreement, are addressed in Argument Sections V A–B, *infra*.

the parties must affirmatively agree that their oral contract is **contingent** upon the execution of a written agreement.[9]  *See* A28 ("the record contains no evidence indicating that the parties made a settlement *contingent* upon the execution of a written agreement") (emphasis added)).  Notably, Endo fails to cite any support for the position that, where the parties have agreed on essential terms, a writing is necessary to create a final enforceable agreement just because the parties "contemplated" the agreement will ultimately be reduced to writing.

## V.    THE DISTRICT COURT'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS

In its Opinion, the district court makes a number of factual findings upon which it relied in determining that the parties reached an enforceable settlement agreement.  On appeal, Endo challenges several of these factual findings as clearly erroneous.  In particular, Endo maintains that the following four findings by the district court constitute clear error: (1) the district court's determination that the █████████████████████ was not an essential term, (2) the district court's determination that any open issues or future negotiations relate exclusively to non-essential terms, (3) the district court's determination that Mylan's launch date was

---

[9] As discussed in Argument Section V D below, the district court's finding that the parties' oral agreement was not contingent on the execution of a written agreement was not clearly erroneous.

CONFIDENTIAL INFORMATION REDACTED

sufficiently definite to be enforceable; and (4) the district court's determination that the parties did not make their settlement contingent upon a signed writing.

As set forth below in greater detail, Endo has utterly failed to show that any of the district court's factual determinations were clearly erroneous. To the contrary, as is clear from the Opinion, these fact determinations were reached only after careful and deliberate consideration of the record, which included sworn testimony by witnesses from Endo and Mylan as well as other relevant evidence.

**A.    The ▮▮▮▮▮▮▮▮▮▮▮ Was Not an Essential Term**

**1.    The District Court Found, and Endo Does Not Dispute, That the Parties Agreed on Three Essential Terms**

Despite accusing the district court of resting its decision on faulty factual conclusions, on appeal, Endo does not appear to dispute the core of the district court's factual findings concerning the parties' January 28 oral agreement.

First, Endo does not dispute that its January 10, 2014 settlement offer— which Endo itself described as its "final" offer—contained the following three essential terms: (1) Mylan would be entitled to launch its proposed generic four weeks prior to patent expiration; (2) Endo would not license or authorize the launch of a so-called authorized generic or any other generic frovatriptan product any earlier than ten days prior to patent expiration, and (3) Endo would pay Mylan $1.5 million in attorney fees. A11–A12, A24; A2092 at ¶ 4; A2739:8–17;

-30-

CONFIDENTIAL INFORMATION REDACTED

A2741:11–16; A2658:23–A2660:13, A2665:18–22; A2759:24–A2761:10; A3016 at ¶ 17; A1944:22–A1945:2.

Second, Endo does not dispute that, as of January 28, 2014, Endo had not withdrawn or amended its January 10 offer. The testimony of Endo's own witness could not have been clearer on this point:

> Q: Let me ask you this, sir, on the morning of January 28th when you woke up and got ready to go to work, there was an outstanding settlement offer from Endo to Mylan, correct?
>
> [Mr. Donatiello]: That's right.
>
> Q: And later that morning, Andrea Tiglio called you and told you she accepted on behalf of Mylan that offer, correct?
>
> [Mr. Donatiello]: That's correct.

A2768:1–7; *see also* A24; A2761:23–A2762:1.

Third, Endo does not dispute that, on January 28, 2014—with Endo's offer still outstanding—Dr. Tiglio, on behalf of Mylan, called Mr. Donatiello and accepted in full Endo's January 10 final offer, to which Mr. Donatiello responded "That's great!" A24; A2767:4–9; A2718:25–A2719:12.

In view of the above, the district court's determination that the parties reached a final agreement comprising three essential terms is not clearly erroneous, in fact, it is the obvious conclusion. *See Maya Swimwear*, 855 F. Supp. 2d at 234; *see also* A32 ("If the parties reached an agreement on all essential terms, then a

-31-

valid contract exists.") (citing *Intellisource Grp.*, 1999 U.S. Dist. LEXIS 12446 at 12–13)).

> ### 2.     The District Court's Finding that the ███████ ████ Was Not an Essential Term Is Not Clearly Erroneous

Faced with a clear and undisputed offer and acceptance of the three key terms noted above, Endo argues that the district court erred in finding the ███████ ████████—which had been absent from the parties' discussions for more than a month and which was not part of Endo's "final offer"—was not essential to the parties' agreement.  Specifically, Endo argues that the district court improperly rested its finding that the ████████ was non-essential on Mylan's subjective belief as to the non-importance of the term, rather than on the parties' conduct during the course of negotiation and objective manifestations of the parties' intent.  Endo Op. Br. at 39.

Endo's argument should be rejected.  Contrary to Endo's claim, the district court based its ruling with respect to the ████████ on the parties' course of dealing and outward objective manifestations, not on Mylan's subjective, unexpressed belief.  In particular, the district court credited the testimony of Mylan's witnesses that, while Mylan raised the ████████ at the outset of the negotiations, Mylan "ceased pushing [the term] altogether almost immediately" and had not raised the ████ for over a month at the time of Endo's

CONFIDENTIAL INFORMATION REDACTED

"final" settlement offer.  A34–A37; A35 n.28.  As Mylan's witnesses explained,
between December 4, 2013 and January 10, 2014, Ms. Bhatt had approximately six
telephone conversations with Mr. Donatiello regarding the settlement terms.
A2740:11–13.  While the ████████████ was raised during the December 4
call, Ms. Bhatt testified that the ████ was not raised during the December 5 call
or in any subsequent call between the parties.  A2738:5–7, A2738:22–A2739:7.
And although Mr. Donatiello testified that Ms. Bhatt brought up the ████████
████ during a conversation in mid-December, given Mr. Donatiello's difficulties
recalling specific dates and in light of Ms. Bhatt's clear recollection that she did
not bring up the ████████████ after December 4, the district court credited
Ms. Bhatt's testimony on this point.  A35 n.28.  In any event, even Mr. Donatiello
concedes that Mylan did not bring up the ████████████████ in any
conversation with him at least between mid-December 2013 and January 28, 2014.
A2777:13–17; A2756:3–5.  Plainly, the content of the calls between the two
parties' in-house counsels are evidence of objective manifestations, not subjective
intent.

Further supporting the district court's conclusion that the ████████████
████ was non-essential is the undisputed fact that Endo's final settlement offer
did not contain anything about a ████████████████.  A2759:24–A2761:10.  Nor
did Mylan mention the ████ when accepting Endo's offer, despite the fact that

-33-

CONFIDENTIAL INFORMATION REDACTED

Dr. Tiglio specifically and intentionally recited the essential terms of the parties'

agreement.  *See* A36 ("Not only did Tiglio accept the January 10 Offer, which

Donatiello acknowledges did not explicitly include the ███████████, but

also Tiglio did not include the ███████████ when she recited the terms of

Mylan's acceptance.").

Consistent with this course of dealings, Mr. Donatiello testified that the term

was of no importance to Endo:

> Q: If Endo -- excuse me. If Mylan wanted to give up ███████████,
> if they concluded it's not that important to us, would Endo have
> objected to that?
>
> [Mr. Donatiello]:   No, I don't think so . . . .
>
> Q:   The answer is no, you would not have objected to them dropping the
> ███████████?
>
> [Mr. Donatiello]:   In and of itself, probably not, no.

A2776:4–13.

The district court also found "quite significant" that the parties intended to

notify the court that they had reached an agreement in principle, which they

expected would result in the court holding its decision in abeyance.    A30.

Specifically the district court questioned Mr. Donatiello on his state of mind and

intent upon reaching agreement:

> THE COURT:  Do you recall Dr. Tiglio saying to you should we ask the
> Court to hold her decision in abeyance, do you recall her asking you that?
>
> [Mr. Donatiello]: Yes, I do.

-34-

THE COURT: And was your response back to her something along the lines, is this what you're saying, that it's not for you to tell the Judge what to do?

[Mr. Donatiello]: I didn't think it was necessary, that the Court would know what to do.

THE COURT: You didn't think it was necessary to what?

[Mr. Donatiello]: *I didn't think it was necessary to tell the Court what to do.*

THE COURT: *And is that because you knew that if I were to get a letter from the parties saying that an agreement had been reached in principle, I would know not to issue an Opinion?*

[Mr. Donatiello]: *That's – yes, that's correct.*

A2771:9–25 (emphasis added). Based in part on Mr. Donatiello's testimony, the district court determined that "both parties believed an agreement had been reached . . . and the litigation had settled in principle," despite Endo's post-facto insistence that there remained open, material terms. A30. The fact that the parties intended to notify the court that a settlement had been reached—despite the fact that the ▇▇▇▇▇▇▇▇ was not part of the offer put forth by Endo and accepted by Mylan—provides additional support for the district court's conclusion that the ▇▇▇▇▇▇▇▇ was not an essential term. *See* A36–A37.

Despite the above, Endo nonetheless maintains that the district court committed clear error in finding the ▇▇▇▇▇▇▇▇ to be non-essential. In support of its contention, Endo lists five "reasons" that purportedly necessitate a different conclusion: (1) the ▇▇▇▇▇▇▇▇ was in Mylan's January 24

-35-

draft, (2) Mylan periodically raised the ▮▮▮▮▮▮▮▮ during negotiations, (3) Mylan implicitly raised the ▮▮▮▮▮▮▮▮ by asking if Mr. Donatiello reviewed the January 24 draft document, (4) Mr. Donatiello objected to the ▮▮▮▮▮▮▮▮ term in the January 24 draft, which prompted Dr. Tiglio to respond: "mark it up", and (5) Mylan never told Endo that it considered the term unimportant or withdrawn.  Endo Op. Br. at 40.

These reasons, alone or in combination, do not shake the foundation of the district court's sound reasoning and conclusion.  Endo's first, third, and fourth points all ignore the fact that the January 24 draft was simply a working document for the parties to ultimately record their finalized agreement, including the three essential terms and any other non-essential terms the parties may resolve. Significantly, neither party viewed the January 24 draft as a counteroffer or as otherwise altering the status of Endo's January 10 final offer; in fact, Endo's in-house counsel did not even review the January 24 draft thoroughly.  A12; A2762:12–17; A2764:6–9 ("Q. In response to getting the draft settlement agreement, you didn't withdraw your settlement offer to Mylan, did you? A. No, I did not."); A2666:24–A2667:5 ("Q. Did you intend for this document to be a counteroffer to the three terms that Endo had offered in settlement? A. No. . . . It's just a - just a model or draft starting point ultimately after we had received approval that we could memorialize the offer in writing.")  The district court also

CONFIDENTIAL INFORMATION REDACTED

took note of the fact that it was only after Mylan accepted Endo's offer on January 28 that Mr. Donatiello raised the subject of the ███████████ in the January 24 draft, to which Mylan's Dr. Tiglio responded "mark it up"—yet another outward manifestation of the parties' view that the ███████████ was not an essential term. *See* A36–A37.

As for Endo's second point—that Mylan periodically raised the ███████████ during the parties' discussion—Endo is simply wrong. As described above, Ms. Bhatt did not bring up the ███████████ in any conversations with Mr. Donatiello after December 4, 2013. A2738:22–A2739:7. And while Mr. Donatiello suggested the term was raised during a mid-December call, the district court did not find his testimony credible on this point. *See* A35 n.28.

On Endo's fifth and final point, the district court considered and rejected Endo's argument that Mylan's failure to expressly disclaim the ███████████ rendered it essential. *See* A36. In fact, the district court found the opposite: "[T]he fact that Mylan did not push this term (and in fact ceased raising it at all) demonstrates their lack of concern over a ███████████." *Id.*

In sum, because the record as to the parties' course of dealings and objective manifestations of intent fully supports the district court's conclusion that a reasonable person would not consider the ███████████ to be an essential

-37-

CONFIDENTIAL INFORMATION REDACTED

term of the parties' agreement, Endo's attempt to dismiss this finding as clearly erroneous should be rejected.

## B.     Any Open Issues Exclusively Related to Non-Essential Terms

Endo also fails to show that the district court erred in finding that the other purportedly "open issues" at the time of Mylan's acceptance were non-essential and thus are irrelevant to the enforceability of the parties' agreement on the three essential terms. *See* A33–A34; A37–A38.  In support of its argument, Endo relies on Mr. Donatiello's post-acceptance statement that "there were significant issues to be resolved before a settlement could be completed"—issues that, at the hearing, Mr. Donatiello claimed were "important" to Endo.  *See* Endo Op. Br. at 42–45. The factual circumstances and objective manifestations at the time Mr. Donatiello made that statement, however, support the district court's conclusion that a settlement on essential terms had already been reached, and that the "significant issues" to which Mr. Donatiello was referring pertained to additional, non-essential terms.

The facts relied on by the district court in reaching its conclusion are largely undisputed.  It is undisputed that Mr. Donatiello's statement regarding additional issues to be resolved was made *after* Mylan's Dr. Tiglio accepted the January 10 final offer and *after* Mr. Donatiello responded "that's great!"  A16; Endo Op. Br. at 45.  It is also undisputed that Mr. Donatiello's statement came *after* Dr. Tiglio

-38-

explicitly and precisely recited the three terms contained in Endo's offer and accepted by Mylan—terms that had nothing to do with the purportedly "significant" issues Endo now claims were essential to the parties' agreement. *See* A24–A25. Finally, it is undisputed that, in response to Mr. Donatiello's "significant issues" statement, Dr. Tiglio did not express any concern about the status of the offer she had just accepted and confirmed, but rather invited Mr. Donatiello to mark up the draft, thereby signaling that Mylan was not insisting on any of the "open terms." A16. In light of these undisputed facts, there can be no doubt that the district court was well within its right to conclude that "a reasonable person would view Donatiello's response [*i.e.* 'that's great'] as indicating an intent to be bound as it reflects his understanding that an agreement had been reached as to the three terms recited by Tiglio," and that any additional terms to be resolved were not essential to the parties' agreement. A24–A25.

Indeed, Endo itself conceded that these so-called "open terms" were nonessential by agreeing to send a letter advising the district court that the parties had reached a settlement agreement in principle—a letter that Mr. Donatiello himself acknowledged would prompt the court to halt the litigation. A16. Endo does not and cannot explain why they would agree to send a letter to the court advising that the parties had reached a settlement if, in fact, the parties had not.

-39-

In short, the fact that certain terms may have been "important" to Endo, or that Mylan may have "prefer[red]" certain terms be included in the document memorializing the parties' agreement, "does not by default render them essential terms." A37; *accord Maya Swimwear*, 855 F. Supp. 2d at 234; *Loppert*, 865 A.2d at 1289. Instead, the determination as to which terms are essential depends on the course of dealing and objective manifestations of the parties. *See supra*, Argument section IV A. As discussed in detail above, the circumstances presented here plainly support the district court's conclusion that any "open terms" at the time of Mylan's acceptance were nonessential and thus irrelevant to the enforceability of the parties' agreement.

### C. The District Court's Determination that the Launch Date Was Agreed To and Definite Was Not Clearly Erroneous

It is undisputed that the parties agreed that Mylan's launch date would be "four weeks prior to [the '864] patent expiration." A26; A2660:23–A2661:3; A2740:1–3; A3013 at ¶ 9; A3016 at ¶ 17. Despite this clear meeting of the minds, on appeal, Endo argues that the parties in fact failed to "reach a definite agreement on this material term" because their respective calculations of the launch date resulted in a two-day differential, *i.e*., October 9 versus October 11. Endo. Op. Br. at 47. Endo's attempt to manufacture a disagreement in order to defeat enforcement of a settlement it now regrets should be rejected.

In proffering this argument, Endo primarily relies on Mylan's inclusion of an October 9, 2015 launch date in its January 24 draft settlement agreement. During her testimony, however, Dr. Tiglio explained that the inclusion of the October 9 date in the January 24 draft settlement agreement was the result of an inadvertent miscalculation on her part. A2660:18–A2661:7; A2663:2–22. The district court found this testimony to be credible. A26. Indeed, even Mr. Donatiello acknowledged that it occurred to him that the date in the Mylan January 24 draft settlement agreement was simply a miscalculation, equivalent to a typographical or clerical error. A2807:21–A2808:9.[10] Although Endo suggests that the doctrine of mutual mistake applies, claiming that "Donatiello and Tiglio meant two different things" when referencing the four week launch date (Endo Op. Br. at 48), Endo's reliance on this doctrine is mistaken. (emphasis omitted). As Endo itself acknowledges, the mutual mistake exception only applies where "'neither party knows or has reason to know the meaning attached by the other.'" Endo Op. Br. at 49 (quoting Restatement (Second) of Contracts § 20(1) (1981)); *see also* Restatement (Second) of Contracts § 20(2) (1981) ("The manifestation of

---

[10] On appeal, Endo attempts to rebut Dr. Tiglio's testimony by pointing to Mylan's incorporation of the mistaken date into other documents including Mylan's briefing and proposed order. Endo Op. Br. at 47. But this shows nothing more than Mylan inadvertently relying on what was and has always been a mistake. In any event, the district court found Dr. Tiglio's testimony to be entirely credible.

the parties are operative in accordance with the meaning attached to them by one of the parties if . . . that party does not know of any different meaning attached by the other, and the other knows the meaning attached by the first party."); *see also William Lloyd, Inc. v. Hrab*, Case No. 98A-07-001-HLA, 1999 Del. Super. LEXIS 276, at n.23 (Del. Sup. Ct. 1999) (citing the Restatement (Second) of Contracts § 20). Endo, however, *knew* of Mylan's mistake; the October 9 date was set forth in the January 24 draft settlement agreement, and Mr. Donatiello admitted that he perceived the possibility the date was the result of a miscalculation by Mylan.[11] A2807:21–A2808:9.

In fact, there is no dispute that the parties negotiated and agreed to a launch date of "four weeks prior to patent expiration," as opposed to a specific date. A2660:23–A2661:3; A2740:1–3; A2758:14–23, A2760:2–5. Consistent with this agreement, Mr. Donatiello testified that he understood that Mylan was seeking to enforce the launch date of "four weeks prior to patent expiration," and he conceded that one can calculate that date with certainty. A2806:20–22, A2807:8–13. To the extent that Mylan suggested a different date in its January 24 draft, that was simple

---

[11] Endo also argues that the court erred in finding that the parties stipulated to November 7, 2015 as the '864 Patent's expiration date. Endo, however, did in fact stipulate to November 7, 2015 as the patent expiration date in the pretrial stipulated facts. A27; A384 at ¶ 39. Moreover, Endo's own recording of the expiration date for the '864 patent in the FDA's Orange Book is November 7, 2015. Nevertheless, even Endo admits this argument over the expiration date is irrelevant. *See* Endo Op. Br. at 48.

error—the equivalent of a typo—and does not provide a basis for Endo to renege on its agreement.  Under such circumstances, the district court's factual finding that the parties reached an agreement on this term cannot be said to be clearly erroneous.

### D.   The Parties' Agreement Was Not Contingent Upon a Writing

Endo next argues that the parties' oral agreement is unenforceable because the parties intended to, but never did, reduce their agreement to writing. Specifically, Endo contends that the district court's factual finding that "the record contains no evidence indicating that the parties made a settlement *contingent* upon the execution of a written agreement" is clearly erroneous.  Endo Op. Br. at 50 (citing A28 (emphasis added and omitted)).  In support of this argument, Endo points to the following: (1) the January 24 draft agreement circulated by Mylan, (2) Dr. Tiglio's testimony that she expected the parties' agreement to be reduced to writing, (3) Mr. Donatiello's post-acceptance statement that "significant issues remained", (4) Dr. Tiglio's invitation for Endo to mark up the January 24 draft, and (5) Mr. Donatiello's testimony that Endo always enters into a written settlement agreement.  Endo Op. Br. at 50–51.  Far from supporting Endo's position, however, each of these five points reasonably supports the conclusion reached by the district court, *i.e.* that while a writing may have been *intended* by the parties,

-43-

the enforceability of the settlement agreement was not *contingent* upon the execution of a document.

For example, although Mr. Donatiello testified as to Endo's (unwritten) practice of entering into written settlement agreements, there is no evidence that Endo communicated this purported practice to Mylan. *See* A28 ("Endo failed to advise Mylan of this practice or Endo's view that any verbal agreement would not be final and enforceable until it was formalized in writing."). Moreover, the fact that Endo may have a general practice of entering into written settlements does not mean that the enforceability of Endo's particular agreement with Mylan was contingent upon the execution of a writing.

With respect to Mr. Donatiello's comment concerning "significant issues to be resolved" with respect to the January 24 draft and Dr. Tiglio's response that he should "mark it up" accordingly, it is undisputed that this exchange occurred ***after*** Mylan accepted Endo's outstanding January 10 offer, thereby confirming that the parties did not make their agreement with respect to the three essential terms contingent upon finalization of a written agreement. Finally, the fact that Mylan circulated the January 24 draft demonstrates nothing more than what Dr. Tiglio acknowledged on the stand: Mylan expected that the parties' agreement would be memorialized in writing. Notably, neither Mylan nor Endo even suggested—let

-44-

alone insisted on—waiting for the settlement documents to be finalized before advising the court that an agreement had been reached.

In sum, as its Opinion makes clear, the district court carefully examined the record and made sound factual and credibility determinations, which it clearly articulated in reaching its conclusion. A27–A28. Accordingly, the district court's finding that the parties did not make a settlement contingent upon the execution of a written agreement was not clearly erroneous.

## VI. THE DISTRICT COURT'S RULING DOES NOT HINDER PUBLIC POLICY FAVORING SETTLEMENT

Contrary to Endo's assertion, the district court's ruling supports, rather than hinders, public policy favoring settlement. Endo, in what can only be described as a pervasive theme of its brief, continues to ignore the parties' course of negotiation and the court's factual and credibility determinations when arguing that the court's ruling would "greatly chill future negotiations." Endo Op. Br. at 52.

Essentially, Endo argues that the district court's ruling is incompatible with the "incremental dialog" that often occurs during settlement negotiations. *See* Endo Op. Br. at 11–12 ("The only way for a party to protect itself against the district court's rubric is to refuse to agree to *any* term until *every* term is acceptable."). Far from it. In fact, if what Endo says were true, then the district court would have found a binding settlement agreement when the parties first agreed to $1.5 million in attorney's fees on December 20, 2014. A8. But it did

-45-

not.  Or when the parties agreed to both attorneys' fees and the launch date on or around January 7, 2014.  A10.  But it did not.  Instead, the district court only found an enforceable agreement when the parties' course of dealing and objective manifestation of intent, *see supra* Argument Section V A–B, showed they reached an agreement as to all essential terms.  A30–A31.  The district court was not breaking new ground here.  This is established law.  *Loppert*, 865 A.2d at 1289 ("A settlement agreement is enforceable if it contains all essential terms, even though it expressly leaves other matters for future negotiation.").

Furthermore, as set forth by the district court, there is a significant public interest in the ability of a court to rely on the representations of parties appearing before it.  *See* A5363:3–6 ("Judges must be able to trust the parties' representations that an agreement has been reached in principle, which I found in this case the parties were prepared to represent to this Court.").  After Mylan accepted Endo's settlement offer on January 28, 2014, Mr. Donatiello agreed to submit a letter informing the district court that the parties had reached a settlement, fully expecting that such a letter would prompt the district to refrain from issuing an opinion on the merits of the dispute.  A30.  As the district court correctly noted, if those types of communications from parties cannot be trusted, it would "impede

future communications between the Court and the parties appearing before it," A5363:1–3, which is plainly not in the public interest.[12]

Accordingly, Endo's suggestion that the district court's ruling would in any way harm the public interest is specious and should be rejected.

## VII. THE FEDERAL CIRCUIT CANNOT AND NEED NOT REACH ENDO'S JUDICIAL ESTOPPEL ARGUMENT

### A. The Federal Circuit's Jurisdiction Is Limited to Final Judgments

It is axiomatic that vacated judgments are not final judgments for purposes of appeal. When a judgment is vacated under Rule 60(b), the effect is to nullify the judgment entirely and place the parties in the position of no trial having taken place at all. Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. § 3916 (2d ed.) ("Orders granting [Rule 60(b)] motions to vacate should be treated in the same way as orders granting a new trial"); *see also United States v. Lawson*, 736 F.2d 835 (2d Cir. 1984). Thus vacatur "clears the path for future *relitigation* of the issues between the parties *and eliminates a judgment*." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950) (emphasis added); *see also Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1332 (Fed. Cir. 2003) ("[A] vacated judgment has no

---

[12] In fact, the district court expressed significant concern regarding the truthfulness of Endo's letter later in the day on January 28, in which Endo disputed the existence of a settlement and stated that the parties "are not working on drafting settlement papers." According to the district court, the contents of Endo's letter "contradicts Donatiello's testimony that the parties did indeed agree to put together a settlement agreement." A31 n. 26.

preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case.") (internal quotations omitted); *Typeright Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1155 n.3 (Fed. Cir. 2004) (acknowledging prior dismissal of appeal for lack of jurisdiction where appeal was of a final judgment that had been vacated).

Accordingly, the Federal Circuit does not possess appellate jurisdiction over the district court's vacated January 28, 2014 Merits Decision and related rulings. *See* 28 U.S.C. § 1295(a).

### B. The District Court's Judicial Estoppel Ruling Does Not Merge with the Enforcement Decision Properly on Appeal

The district court determined that it would be inequitable for the Merits Decision to stand since the parties entered into a legally binding settlement agreement *prior* to the issuance of the Court's January 28, 2014 Order and Opinion. A38–A39. By vacating the Merits Decision, the District Court effectively eliminated it, nullifying the final judgment and placing the parties in the position of no trial having taken place. Because all appealable issues from the Merits Decision are now moot, Endo lacks standing to challenge, and this Court lacks jurisdiction to review, issues relating to and culminating in the Merits Decision.

Endo's attempt to shoehorn its appeal of the district court's judicial estoppel ruling into the jurisdiction created by virtue of the district court's final, appealable

enforcement Opinion should be rejected.  *Smith v. Evans*, 853 F.2d 155, 158 n.1 (3d Cir. 1988) ("We note that even though Rule 60(b) preserves the right to appeal, the appeal may bring up only the subject matter of the 60(b) motion and not the underlying case."); *Cliett v. City Of Ocean City*, 346 F. App'x 771, 773-74 (3d Cir. 2009) (unpublished) (holding that the Third Circuit lacks jurisdiction to consider subject matter from the judgment underlying the Rule 60(b) relief); *see, e.g., LeBeau v. Taco Bell, Inc.*, 892 F.2d 605, 608 (7th Cir. 1989) ("[A]n appeal from an order amending an earlier judgment does not independently bring before us the merits of the original decision.").  As the merger doctrine makes clear, only orders that are a part of the progression that led up to the judgment on appeal are merged in the final judgment.  Further, as explained by Wright, Miller & Cooper:

> A notice of appeal that names the final judgment suffices to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders, at least if the earlier orders are part of the progression that led up to the judgment rather than being separate from that progression.

Wright, Miller & Cooper, Fed. Prac. & Proc. Juris. § 3949.4 (4th ed.) at 100–04; *see also In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 377 (3d Cir. 2005) ("[I]nterlocutory orders merge into the final judgment and may be challenged on appeal from *that judgment*.") (emphasis added); *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1253 (3d Cir. 1977) ("[O]nly a final judgment or order is

-49-

appealable, the appeal from a final judgment draws in question all prior non-final orders and rulings *which produced the judgment*") (emphasis added).

Here, there can be no real question that the district court's estoppel rulings were part and parcel of its Merits Decision, not the enforcement Opinion that is the subject of this appeal.  *See* A2056 ("ORDERED that Plaintiff's claims against Defendants related to U.S. Patent Nos. 5,637,611 (filed June 10, 1997) and 5,827,871 (filed Oct. 27, 1998) are DISMISSED WITH PREJUDICE pursuant to Plaintiff's waiver of these claims during trial."); A1950–A1951 ("After consideration of the evidence and the parties' post-trial submissions, and for the reasons set forth below, the Court finds that [] Endo has waived and is now judicially estopped here from pursuing claims against Mylan related to the '871 and '611 Patents in this litigation.").  Because appellate review of the enforcement Opinion is conceptually and jurisdictionally distinct from review of determinations related to the vacated Merits Decision, including the district court's determination on judicial estoppel, Endo's attempt to fabricate Federal Circuit jurisdiction with respect to the district court's estoppel determination must be rejected.

## C.  The District Court's Judicial Estoppel Ruling Is Moot in View of the Parties' Subsequent Settlement

Even if the Court determines that it has the requisite jurisdiction to consider the judicial estoppel ruling as part of Endo's current appeal, it would be improper for the Court to reach the issue because the settlement agreement between the

parties rendered Endo's objection to the district court's estoppel ruling moot. Accordingly, this Court need not reach Endo's judicial estoppel arguments should it affirm the district court's April 8 Opinion.

The district court indicated that Endo would be judicially estopped on the second day of trial, November 13, 2013. A1710:5–19. Endo reached agreement on settlement terms with Mylan over two months later, on January 28, 2014. A14–A15. At the time it made its "final" settlement offer, which was then accepted by Mylan, Endo was fully aware of the posture of the case—including the district court's judicial estoppel ruling—and chose to settle the case rather than pursue any right to appeal the estoppel ruling. Because Endo waived its right to challenge the district court's estoppel ruling by virtue of the settlement, which all parties agreed would result in the termination of the litigation, Endo's appeal of this ruling should be dismissed.

## VIII. THE DISTRICT COURT'S JUDICIAL ESTOPPEL RULING REGARDING THE '611 AND '871 PATENTS SHOULD BE UPHELD

In the event the Court nonetheless determines to consider the judicial estoppel issue, the district court's ruling should be upheld in view of Endo's clear abandonment of its '611 and '871 patent claims during trial and its waiver of any rebuttal to Mylan's obviousness-type double patenting defense through failure to even attempt a reasonable counter to the defense in the pretrial order or other pretrial proceedings.

### A.    The District Court Properly Estopped Endo from Reasserting its Abandoned '611 and '871 Patent Claims

Even if the Court overturns the district court's Opinion enforcing the parties' settlement agreement and determines to consider the merits of Endo's judicial estoppel appeal, the district court's ruling on that issue should be upheld.   The district court properly recognized that Endo "directly contradicted" itself at various times regarding whether it intended to assert the '611 and '871 patents against Mylan.  A1973.  As such, it was not an abuse of discretion for the district court to judicially estop Endo from asserting claims it plainly abandoned during trial.

### 1.    Endo Abandoned Its '611 and '871 Patent Claims Against Mylan During Trial

Endo argues that the district court committed clear error in finding Endo abandoned its claims with respect to the '611 and '871 patents.  But as the district court recognized, Endo's abandonment was unambiguous.  Endo repeatedly cites a single statement, one of many conflicting and confusing equivocations it made during trial on the issue of the terminal disclaimer, in support of its argument that it did not abandon its claims.  *See, e.g.*, Endo Op. Br. at 20 ("terminal disclaimer 'doesn't terminate the infringement claim.' (A1709)"), 21 ("it 'doesn't terminate the infringement claim' (A1709)"), 58 ("terminal disclaimer 'doesn't terminate the patents, it doesn't terminate an infringement claim.' (A1709)").  As the district court properly recognized, however, Endo's abandonment was not the result of its

terminal disclaimer but rather was due to "the unequivocal statements of counsel signifying Endo's intent to abandon its claims here." A1968.

Endo's most definite pronouncement of abandonment came ***after*** the singular statement upon which Endo relies so heavily.  After further questioning from the district court, Endo finally allowed that "the stipulation [Endo] offered was the '864 patent would be the patent that we sue on."  A1709:22–25.  When the district court then pushed Endo to explicitly acknowledge that the result of this stipulation would be that Endo "will not further prosecute a case on the remaining two patents, the '611 and the '871, against Mylan on its current ANDA," Endo clearly and unambiguously replied: "Yes."  A1710:1–4.

In the face of its own explicit waiver of the '611 and '871 patent infringement claims, Endo now argues that this abandonment was ineffective without filing a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a).  Not only does Endo fail to cite any support for this proposition, but in fact ample precedent exists in the Third Circuit for finding a claim abandoned based on representations in the courtroom rather than filing a formal stipulation of dismissal.  *See, e.g., Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 138 n.5 (3d Cir. 2013) (refusing to review district court dismissal of claim based on statements by counsel during oral argument that claim would be abandoned); *Ekhato v. Rite Aid Corp.*, 529 F. App'x 152, 153 n.2 (3d Cir. 2013) (recognizing abandonment of

claim during oral argument); *Newburgh Moire Co. v. Superior Moire Co.*, 218 F.2d 580, 583 (3d Cir. 1955) (sustaining finding that patent claims had been abandoned based on statements by plaintiff's attorney found in trial transcript)

Endo's waiver of its '611 and '871 patent infringement claims against Mylan during trial was unmistakable. Endo offered to stipulate that "the '864 patent will be the patent that we sue on" and agreed that it "will not further prosecute a case on the remaining two patents, the '611 and '871 patents." A1709:22–A1710:4. In view of these unambiguous declarations, the district court's determination that Endo abandoned its claims on those patents cannot be called into question let alone be viewed as clearly erroneous.

### 2. In View of Endo's Abandonment, Endo Was Properly Judicially Estopped from Reviving its Claims

As the district court subsequently explained in detail, its ruling from the bench during trial that Endo would be judicially estopped from asserting the '611 and '871 patents against Mylan was based on Endo's abandonment of those claims. A1966–A1973. Endo cannot show that the district court abused its discretion in reaching this conclusion.

In its brief, Endo points to the three-prong test used in the Third Circuit when analyzing whether judicial estoppel applies. Endo Op. Br. 53. But rather than address the test and any particular prong Endo might contend is lacking, Endo merely argues that the district court committed error by failing to apply the test.

*Id*. at 54–55. Endo, therefore, has waived the right to substantively argue that one or more prongs of the test are not met by the circumstances of this case.

Moreover, Endo is wrong that the district court erred by failing to apply the three-prong test used to determine whether judicial estoppel applies. *Id*. at 54. First, Endo is incorrect that each of the three factors identified by Endo must be satisfied in order for a judicial estoppel ruling to stand. As the Supreme Court has recognized, "the circumstances under which judicial estoppel may appropriately be invoked are not reducible to any formulation" and, while a number of factors may be relevant to the analysis, it would be improper to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel [because] [a]dditional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (citations omitted).

Second, the district court did discuss in detail the factors that led it to apply judicial estoppel. A1966–A1973. Among these were the inconsistent positions taken by Endo (*i.e.*, its post-trial attempt to revive its '611 and '871 patent claims which was "directly contradicted" by its statements during trial (A1973)) and the bad faith evidenced both by that contradiction and by Endo's troubling insistence that it had not reversed course. *Id*. Endo ignores this explanation from the district court, apparently taking the disingenuous position that because the Merits Decision

was ultimately vacated the district court was under an obligation to issue an in-depth analysis on the fly from the bench during trial. But the district court had no such burden; it was free to explain the basic premise of its ruling during trial—in light of Endo's clear abandonment of its claims it would be judicially estopped from pursuing them going forward—and provide a more fully developed explanation in a subsequent, written decision.

Third, numerous courts recognize that circumstances such as those present here justify judicially estopping a party from pursuing a previously abandoned claim. *See, e.g., Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 214–215 (1st Cir. 1987) ("[R]epresentations … that a party will abandon a claim, present a *stronger* argument than do the classic cases for application of the doctrine [of judicial estoppel]") (emphasis in original); *accord Domanus v. Lewicki*, 742 F.3d 290, 304 (7th Cir. 2014) (finding plaintiffs "judicially estopped from abandoning their firm commitment" made in open court to dismiss claim conditionally dismiss claims against defendant); *Peralta v. Vasquez*, 467 F.3d 98, 105 (2d Cir. 2006) (recognizing judicial estoppel would be appropriate to ensure abandonment of claim could not be circumvented); *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1047 (9th Cir. 2004) (finding judicial estoppel applies to prevent pursuit of claim district court understood plaintiff to have abandoned). As in each of these cases, Endo's abandonment of its '611 and '871 patent claims

during trial leads to the obvious conclusion that it should be judicially estopped from pursuing those claims against Mylan now or in the future.

Endo's extensive reliance on *Montrose Med. Grp. Participating Savs. Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001), is misplaced. *See* Endo Op. Br. at 53–55. In *Montrose*, the Third Circuit found a lack of bad faith that would justify judicial estoppel because the inconsistent position was never adopted by a court or agency. 243 F.3d at 781–82. Clearly, that is not the case here, where the party that abandoned its patent claims is now estopped from pursuing those claims. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 325 (3d Cir. 2003) (affirming district court judicial estoppel ruling based on failure to disclose intent to pursue claim, noting "[d]ismissal is necessary to prevent Krystal from profiting from its omission [and] is also required to preserve the integrity of the earlier proceedings.") (internal quotations omitted) (citations omitted). In short, having abandoned its claims against Mylan with respect to the '611 and '871 patents during trial, Endo was and remains properly judicially estopped from taking a position contrary to that abandonment. The district court did not abuse its discretion. *See San Carlos Irrigation & Drainage Dist. v. U.S.*, 111 F.3d 1557, 1568 (Fed. Cir. 1997) (finding no abuse of discretion in ruling position was barred by judicial estoppel based on party representations to lower court, "even if there was a colorable argument" that position was correct).

-57-

### 3. The '611 and '871 Patent Claims are Invalid for Obviousness-Type Double Patenting

Even if the Court were to determine that the court's judicial estoppel ruling is improper, this still would not require remand to the district court for trial on the '611 and '871 claims because those claims are nullities. As an initial matter, Endo waived its right to oppose Mylan's double-patenting defense with respect to these patents by failing to present any basis for such an opposition in the joint pretrial order or at the pretrial hearing, including the ineffective terminal disclaimers. A1417–A1419; A1899–A1900; A883; *see also Sample v. Diecks*, 885 F.2d 1099, 1106 (3d Cir 1989) (upholding estoppel and citing *Randolph Cnty. v. Alabama Power Co.*, 784 F.2d 1067, 1072 (11th Cir. 1986), cert. denied, 479 U.S. 1032 (1987) (within trial judge's discretion to exclude from trial matters not raised in pretrial order)). Accordingly, even before the Patent Office determined the terminal disclaimers are invalid and should be rejected, and before Endo chose to abandon its claims with respect to these patents during trial, the district court was entitled to preclude Endo from contesting the double-patenting defense based on its pretrial waiver.

Perhaps because of this waiver, Endo's purported expert Dr. Rocco freely admitted during the first day of trial that the asserted claims of the '611 and '871 patents fully encompass the claims of the '864 patent. *See* A1570:22–A1571:14; A1571:16–A1574:16.

-58-

Thus, the uncontested evidence at trial leads to the inescapable conclusion that the previously asserted claims of the '611 and '871 patents are invalid for obviousness-type double patenting, absent an effective terminal disclaimer. *See Eli Lilly & Co. v. Barr Labs., Inc.*, 222 F.3d 973, 985 (Fed. Cir. 2000) (analyzing "whether the later claim encompasses [the] subject matter previously claimed" in finding claims invalid for obviousness-type double patenting). As Endo admits in its brief (Endo Op. Br. at 13 n.3), the terminal disclaimers here were not accepted by the Patent Office and therefore cannot be effective. The previously asserted claims of the '611 and '871 patents are therefore invalid for obviousness-type double patenting and cannot serve as the basis for a remand even if the judicial estoppel ruling is overturned.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decisions that the settlement agreement between Mylan and Endo be enforced and that its January 28 Merits Decision be vacated. Additionally, the Court should dismiss Endo's appeal insofar as it seeks to challenge the district court's judicial estoppel decision for lack of jurisdiction and/or mootness. Should the Court find it appropriate to consider the merits of the judicial estoppel issue, this Court should affirm the district court's ruling that Endo was judicially estopped from pursuing its claims against Mylan related to U.S. Patent Nos. 5,637,611 and 5,827,871.

August 4, 2014

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

By: */s/ Michael S. Sommer*
       Michael S. Sommer

Attorneys for Defendants-Appellees Mylan Pharmaceuticals Inc. and Mylan Inc.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I, Michael S. Sommer, hereby certify that on August 4, 2014, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 4, 2014, the attached document was Electronically Mailed to the following person(s):

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
Jblumenfeld@mnat.com
jheaney@mnat.com

Jeffrey I.D. Lewis
Richard H. Maidman
Edward R. Tempesta
Jason R. Vitullo
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
jidlewis@pbwt.com
rmaidman@pbwt.com
ertempesta@pbwt.com
jvitullo@pbwt.com

*Attorneys for Plaintiff-Appellant Endo Pharmaceuticals Inc.*

Upon acceptance by the Court of the e-filed document, six paper copies of the Confidential Brief will filed with the Court, within the time provided in the Court's rules.

In addition, two copies of the Confidential Brief will be sent via Federal Express to Plaintiff-Appellant's Counsel, identified above, within that same time frame.

August 4, 2014          _/s/Michael S. Sommer_____
                                Michael S. Sommer

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(a)(7)(C)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2). The brief contains 13,999 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

August 4, 2014
By: */s/ Michael S. Sommer*
Michael S. Sommer

Wilson Sonsini Goodrich & Rosati
Attorneys for Defendants-Appellees
Mylan Pharmaceuticals Inc. and
Mylan Inc.